UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SHAWN PAUL GROSSMAN,

        Plaintiff,

v.

LIEUTENANT NUEBECKER et al.,

        Defendants.
_____/

Case No. 2:24-cv-102

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MBP personnel: Lieutenant Unknown Neubecker; Warden Sarah Schroeder; Assistant Resident Unit Supervisor/Prison Counselor Unknown Collison; Librarian Unknown Bomer; Resident Unit Manager Unknown Viitala; and Corrections Officer Unknown Bugge.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that on November 7, 2023, Defendant Bomer wrote a misconduct ticket[2] against Plaintiff. Sergeant Nebel (not a party) reviewed the ticket with Plaintiff. Plaintiff requested a hearing. On November 15, 2023, Defendant Neubecker conducted a hearing.

The ticket related to a book that was returned to the MBP library by way of the library box. It was a book from the MDOC's Macomb Correctional Facility (MRF) library. Plaintiff had been housed at MRF before he arrived at MBP. Information identifying Plaintiff, presumably name and prisoner number, was in the book; so Defendant Bomer proceeded as if Plaintiff had returned the book and he had improperly taken it from MRF.

At the hearing, Plaintiff contended that anyone could have written his information in the book and returned it, but he had not. He told Defendant Neubecker that he had never taken the book out of the MRF library or had the book in his possession or control and that he never returned the book to the library box at MBP. Plaintiff posited that another prisoner, Al Laporte,[3] had taken the book from MRF, written Plaintiff's information in it, and returned it to the MBP library.

Plaintiff says that Defendant Neubecker simply ignored Plaintiff's testimony and evidence and then mischaracterized it in the misconduct hearing report. According to Plaintiff, Neubecker falsely reported that Plaintiff admitted the theft of the book from MRF and acknowledged it was in Plaintiff's area of control. Defendant Neubecker found Plaintiff guilty of a misuse-of-property misconduct and sanctioned Plaintiff with 15 days' loss of privileges.[4]

---

[2] Plaintiff indicates that he included a copy of the misconduct report with his complaint. (Compl., ECF No. 1, PageID.5, 13.) Plaintiff also indicates that he included a copy of the misconduct hearing report with his complaint. (*Id.*) There were no documents attached to Plaintiff's complaint when it was received by the Court.

[3] Prisoner Laporte was paroled at about the same time Plaintiff filed his complaint. *See* MDOC Offender Tracing Information System (OTIS) https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=470822

[4] "[A]ll of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction: A. Day room, activity room, TV room, study room, or other designated area where

4

Before the hearing, Plaintiff had written Defendant Schroeder regarding the matter, complaining that Defendant Bomer conducted no investigation regarding the matter.[5] Defendant Schroeder ignored Plaintiff. Plaintiff claims he wrote to Defendants Viitala and Collison regarding the same thing. Despite all of Plaintiff's efforts, he was still found guilty.

Plaintiff indicates that he filed appeal paperwork on November 19, 2023. A month went by with no word regarding the matter. When Plaintiff inquired, he was told that no appeal paperwork had been received. Plaintiff wrote Defendants Schroeder, Viitala, and Collison once again, and he filed a grievance. He got no response. Plaintiff indicates that he also "explained to them that [he] would go into litigation over this because this was unfair, and not right." (Compl., ECF No. 1, PageID.8.)

Plaintiff notes that "[a]fter all was said and do[ne,]" Laporte provided a signed confession that he had put Plaintiff's information in the book and returned it to the library box. (*Id*., PageID.9.) Plaintiff sent Laporte's signed declaration to "all parties involved," but they would not remedy the situation. (*Id*.)

---

similar activities occur[;] B. Exercise facilities, such as yard, gym, and weight room/pit[;] C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy[;] D. Out of cell hobbycraft activities[;] E. Kitchen area, including microwave, ice machine, and hot water dispenser[;] F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards")[;] G. Movies[;] H. Music practice; musical instruments[;] I. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee[;] J. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney[;] K. Visiting[, t]his applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report[; and] L. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information). MDOC Policy Directive 03.03.105, Att. E (eff. Apr. 18, 2022).

[5] Plaintiff also notes that he wrote to Defendant Bomer explaining that he did not take the book from MRF and did not return the book at MBP. (Compl., ECF No. 1, PageID.7.) Plaintiff asked Bomer to investigate, to no avail. (*Id*.)

Plaintiff alleges that "[s]ince then [he has] been treated unfairly by all parties involved." (*Id*., PageID.10.) Specifically, Plaintiff states that Mr. Bomer has not given Plaintiff books to read, and Defendant Bolton claims he is not getting Plaintiff's requests to file grievances. Plaintiff also alleges that since the November 7, 2023, incident, he has suffered multiple "calculated shakedowns to harass [him]." (*Id*., PageID.12.) Plaintiff identifies one such incident: on February 9, 2024, Defendant Bugge came into Plaintiff's cell, tore up Plaintiff's legal papers, threw Plaintiff's property out of his cell, but did not prepare a contraband removal record. (*Id*.) Plaintiff claims that the calculated shakedowns, which have occurred months after the situation, are retaliatory. (*Id*., PageID.25.) But he also acknowledges that he does "no[t] know where there was any discrimination, conspiracy, or retaliatory motive . . . ." (*Id*.)

Plaintiff claims that Defendants have violated his due process rights. He wants the Court to rehear his misconduct because his misconduct record impacts the security level of the facility where he may be housed and is reviewed by the parole board. He asks the Court to issue an injunction requiring that Defendants remove the misconduct report from Plaintiff's record. Additionally, Plaintiff claims the Defendants' failures to process his grievances, failures to allow his to petition the government for redress, and calculated shakedowns are retaliatory and, therefore, a violation of his First Amendment rights. (*Id*., PageID.25, 27.) Plaintiff also references "[d]eliberate [i]ndifference" when setting forth his claims. (*Id.*, PageID.27.) He asks the Court to award compensatory damages as well.

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

6

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Denial of Due Process in the Disciplinary Proceedings

Plaintiff claims that all Defendants interfered with his due process rights related to the Class-II misconduct ticket for misuse of property. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v.*

7

*McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Based on Plaintiff's allegations, his Class II misconduct disciplinary proceedings did not affect the duration of his sentence nor did the proceedings impose an atypical and significant hardship on Plaintiff. Thus, Plaintiff's due process claim fails at the first step.

Plaintiff claims that he "was punished for [the misconduct] by having to do more time." (Compl., ECF No. 1, PageID.24.) That claim is unsupportable. No matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is incarcerated for crimes committed on June 24, 2014. *See* MDOC OTIS, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=621120 (last visited Sept. 23, 2024). Plaintiff is 10 years

8

and 3 months into an indeterminate sentence of 10 to 15 years. *Id*. Although there are incentives for serving time without misconducts, those incentives do not impact the duration of the sentence under *Sandin*.

In general, the MDOC no longer rewards prisoners for serving time "misconduct free." Instead, prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, are given "disciplinary time" when they are found guilty of a major misconduct. *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34. Plaintiff is incarcerated for a crime he committed on June 24, 2014. Therefore, he is subject to disciplinary time with regard to his indeterminate sentence. Mich. Comp. Laws § 800.34.

Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Moreover, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

9

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of Defendant Bomer's misconduct report, or Defendant Neubecker's determination that Plaintiff was guilty of misconduct, would not rise to the level of an atypical and significant hardship.

Accordingly, the Court finds that Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with regard to the misconduct proceedings.

### B.     Denial of Due Process Relating to Grievances

Plaintiff also alleges that certain Defendants failed to process his complaints or grievances regarding the disciplinary process. The Court construes these allegations as a claim that Defendants violated Plaintiff's due process rights to file grievances or to petition the government for redress of grievances.

The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, the alleged failure to process Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that Defendants violated his right to petition the government by failing to process his grievances, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Accordingly, any intended due process claim regarding Plaintiff's use of the grievance procedure will be dismissed.

11

### C. First Amendment-Retaliation

Plaintiff contends that Defendants retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation claim is stated in paragraphs 40–41, 48–51, 53, and 57 of the complaint[6] as follows:

> 40. I [wrote] the Warden Schroeder, L.T. Neubecker, R.U.M. Viitala, ARUS Collison, [and] Librarian Bomer asking for help for someone to look into what was happening.
>
> 41. I filed a grievance for this also, for my appeal paperwork coming up missing.
>
> * * *
>
> 48. This wasn't just a ticket as they called it.
>
> 49. I have been messed with and retaliated against ever since.

---

[6] Plaintiff's complaint could be more accurately described as a combination of two similar factual statements: the first appears in unnumbered paragraphs beginning on the fourth page of the complaint (ECF No. 1, PageID.4–14); the second begins on PageID.15 and continues with numbered paragraphs through PageID.27.

50. From paperwork mysteriously missing to not receiving store on time to healthcare not giving me my K.O.P.s to calculated shakedowns tearing apart my property, which need to be investigated.

51. Furthermore months after situation I am being retaliated against by way of calculated shakedowns going thru my legal work tearing and throwing away legal documents that pertain to this case.

\* \* \*

53. I do no[t] know whether there was any discrimination, conspiracy, or retaliatory motive, but those possibilities should be investigated and looked at by the court.

\* \* \*

57. The refusal of Defendants Schroeder, Neubecker, Bomer, Collison, [and] Viitala to provide protection and secure my constitutional rights to file grievances and to file and petitioning gover[n]ment for redress resulted in constituted retaliation by Defendant Bugge [and] violated my First Amendment rights.

(Compl., ECF No. 1, PageID.23–26.)

### 1. Protected Conduct

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Plaintiff engaged in protected conduct when he wrote Defendants Schroeder, Nuebecker, Viitala, Collison, and Bomer kites asking for help before the hearing. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). He also engaged in protected conduct when he filed his appeal of the misconduct and the grievance regarding that appeal. *See Bell*, 308 F.3d at 607 (6th Cir. 2002); *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

### 2. Adverse Action

#### a. Not Helping

The only "adverse action" that Plaintiff specifically mentions with regard to Defendants Schroeder, Nuebecker, Viitala, Collison, and Bomer is not responding to Plaintiff's requests for help by helping him. The Court concludes that Defendants' respective failures to respond to

13

Plaintiff's requests for help or refusal to help would not constitute "adverse action" sufficient to deter a person from asking for help. Indeed, if denying a request for help or a grievance was considered adverse action, every denial would give rise to liability for retaliation under the First Amendment. The Sixth Circuit, however, has clearly held that the denial of grievances does not give rise to liability under § 1983. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008).

And, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim).

Therefore, Plaintiff's First Amendment retaliation claims against Defendants Schroeder, Nuebecker, Viitala, Collison, and Bomer fail at the second step and will, therefore, be dismissed.

### b.     Shakedowns and Destroying Property

Plaintiff also alleges that he endured "calculated shakedowns" of his cell, one of which left items of his personal property damaged. A cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray

14

and results in the confiscation or destruction of materials. *See Bell*, 308 F.3d at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Plaintiff describes only one such shakedown. On February 9, 2024, Defendant Bugge came into Plaintiff's cell, threw property out of Plaintiff's cell, and destroyed Plaintiff's legal property. The Court concludes that Plaintiff's description of the incident on February 9 rises to the level of adverse action.

### 3. Retaliatory Motive

For Defendant Bugge's February 9 conduct to be actionable as First Amendment retaliation, Plaintiff must allege facts that support an inference that Bugge was motivated to take the adverse action by Plaintiff's protected conduct. Plaintiff does not allege any facts. He merely states in a conclusory manner that Bugge's actions were retaliatory. Plaintiff does not attempt to connect Defendant Bugge's adverse action to any particular protected conduct. The adverse action was not proximate in time to the disciplinary proceedings or attempted appeal. The shakedown occurred about a month after Plaintiff's grievance regarding the failure to process his appeal. But Plaintiff does not allege that Bugge was aware of the grievance nor does he allege that the grievance had anything to do with Defendant Bugge.

"Retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F.

App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)))). Plaintiff does nothing more than use the word retaliation in his complaint. He acknowledges that he does not know why Bugge shook down Plaintiff's cell. In short, Plaintiff has not presented any facts to support his conclusory assertion that Bugge's adverse actions were motivated by Plaintiff's exercise of his First Amendment rights.

Accordingly, the Court will dismiss this retaliation claim as well.

### D. Eighth Amendment

Near the end of Plaintiff's complaint, he uses the words "deliberate indifference," (Compl., ECF No. 1, PageID.27), and then he describes the deliberately indifferent conduct as follows: "The refusal of defendants [] Schroeder, Bomer, Neubecker, Collison, [and] Viitala to look into the information and evidence and ignore the knowledge of the misconduct resulted in a wrongful guilty verdict." (*Id*.) The Court presumes that Plaintiff, by throwing in the words "deliberate indifference," is attempting to invoke the protections of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

16

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Plaintiff's claim fails on the first prong; he has not alleged facts that support the inference that he is incarcerated under conditions that pose a substantial risk of serious harm. The harms Plaintiff does allege—15 days' loss of privileges, one or more cell shakedowns, and frustration at being accused and convicted of a misuse of property while maintaining his innocence—fall into

17

the category of "routine discomforts" that a criminal endures for his offenses against society. The Sixth Circuit has held that without a showing that basic human needs were not met, a denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795.

Therefore, Plaintiff has failed to state a claim for violation of his Eighth Amendment rights.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 1, 2024                                       /s/ *Maarten Vermaat*
                                                               Maarten Vermaat
                                                               United States Magistrate Judge